UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jean-Paul Gadbois,      Case No. 24-CV-01662 (JMB/JFD)

  Plaintiff and Counterclaim Defendant,

v.      **ORDER**

Arrow International Inc.,

  Defendant and Counterclaim Plaintiff.

---

Charles Goldstein, Advocate at Work, Minneapolis, MN, for Plaintiff and Counterclaim Defendant Jean-Paul Gadbois.

Kurt J. Erickson and Stephanie Huisman, Littler Mendelson, P.C., Minneapolis, MN, for Defendant and Counterclaim Plaintiff Arrow International Inc.

---

This matter is before the Court on Defendant and Counterclaim Plaintiff Arrow International Inc.'s (Arrow) motion to strike the amended complaint, motion for judgment on the pleadings or to dismiss Plaintiff Jean-Paul Gadbois's claims against it, and motion for partial summary judgment on its counterclaim. (Doc. No. 7.) In this action, Gadbois, a former Arrow employee, alleges that Arrow discriminated against him on the basis of his age, in violation of the Minnesota Human Rights Act (MHRA) and the Age Discrimination and Employment Act (ADEA). For its Counterclaim, Arrow alleges that Gadbois breached his employment agreement with Arrow by bringing his claims outside of a contractual limitations period. Arrow seeks dismissal of Gadbois's claims and partial summary judgment on its Counterclaim. For the reasons discussed below, the Court denies Arrow's

1

motion to strike, denies Arrow's request to dismiss Gadbois's claims, and denies Arrow's motion for partial summary judgment.

## BACKGROUND AND STATEMENT OF UNDISPUTED FACTS

Arrow is a manufacturer and distributor of "Charitable Gaming products." (Doc. No. 5 ¶ 2.) On March 16, 2023, Arrow extended an offer of employment to Gadbois. (Doc. No. 3-2.) The offer was contingent upon Gadbois executing an Employment Agreement (Agreement), among other things. (*Id.* at 2.) Gadbois executed an Agreement that includes the following provision at Paragraph 19, which limits the statute of limitations for any claim that Gadbois may bring against Arrow to six months:

> <u>READ BEFORE SIGNING</u>: TO THE EXTENT PERMITTED BY LAW, I AGREE THAT ANY CLAIM, CHARGE OR LAWSUIT RELATING TO MY SERVICE WITH COMPANY OR ANY OF ITS SUBSIDIARIES OR AFFILIATES *MUST BE FILED NO LATER THAN 6 MONTHS AFTER THE DATE OF THE EMPLOYMENT ACTION THAT IS THE BASIS OF THE CLAIM, CHARGE OR LAWSUIT. TO THE EXTENT PERMITTED BY LAW, I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.*

(Doc. No. 3-1 at 7 (all caps in original, emphasis added).) This provision appears directly above the Agreement's signature block. (*Id.*)

According to the Amended Complaint, Gadbois worked for Arrow as a Field Service Engineer from April 3, 2023 to June 5, 2023. (Doc. No. 5 ¶¶ 5, 9, 26.) Gadbois alleges that, during that time, two director-level employees asked him his age; after sharing his age, he alleges he "was met with surprised and suspicious communications between the two superiors as recorded by [Gadbois]." (*Id.* ¶¶ 13, 15.) One of those employees later

2

told Gadbois that Arrow needed to "stop hiring old f***s like us." (*Id.* ¶ 15.) Gadbois also alleges that Arrow denied him certain training and fieldwork opportunities that were part of the Field Service Engineer position description but gave those same opportunities to a younger employee in the same role. (*Id.* ¶¶ 6, 11, 16–19, 31, 33, 35, 40.) Gadbois further alleges that, on June 5, 2023, he emailed management and a co-worker regarding his concerns about others' age-related comments and the allegedly discriminatory treatment that he experienced. (*Id.* ¶¶ 22, 24, 34.) He alleges that Arrow construed his email as a notice of resignation and terminated his employment even though Gadbois had "clarified that he had not resigned." (*Id.* ¶¶ 24, 25.) At all relevant times, Gadbois was fifty-seven years old. (*Id.* ¶¶ 13, 29.)

On January 11, 2024, a little more than seven months after his termination, Gadbois filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), in which he alleged that Arrow ended his employment for unlawful age-related reasons. (Doc. No. 10-1.) The EEOC investigated and issued a right-to-sue letter on January 23, 2024.[1] (Doc. No. 5 ¶ 27.) Approximately three months later, on April 12, 2024, Gadbois filed suit in Minnesota state court against Arrow, in which he alleged that Arrow unlawfully terminated his employment on the basis of age in violation of the MHRA. (*Id.*; Doc. No. 1-1.)

---

[1] At the motion hearing, defense counsel orally informed the Court that Arrow only received the EEOC charge on January 23, 2024, and that the EEOC had dismissed the charge with a no probable cause finding and without requesting any response.

3

On May 7, 2024, Arrow first filed its answer in state court, in which it asserted as an affirmative defense that Gadbois's MHRA claim was time-barred by the contractually shortened statute of limitations period set forth in Paragraph 19 of the Agreement. (Doc No. 3 ¶ 44.) Arrow also brought a counterclaim against Gadbois for breach of contract— specifically, Arrow alleged that Gadbois breached Paragraph 19 by bringing his claims more than six months after the alleged unlawful employment conduct. (*Id.* at 9–11.) Arrow then removed the action to this Court based on diversity of citizenship. (Doc. No. 1.)

On May 21, 2024, Gadbois filed an Amended Complaint, which asserted an additional claim of age discrimination in violation of the ADEA. (*See* Doc. No. 5.)

## ANALYSIS

Arrow has now filed a motion requesting the following relief: (1) strike Gadbois's Amended Complaint as procedurally improper under Federal Rule of Civil Procedure 12(f); (2) dismiss Gadbois's claims under Federal Rule of Civil Procedure 12(c) or Federal Rule of Civil Procedure 12(b)(6) as time-barred; and (3) grant partial summary judgment on the issue of Gadbois's liability for allegedly breaching Paragraph 19 of the Agreement. (Doc. No. 7.) For the reasons discussed below, the Court denies the motion in its entirety.

### I.     MOTION TO STRIKE THE AMENDED COMPLAINT

Arrow first argues that the Court should strike Gadbois's Amended Complaint under Federal Rule of Civil Procedure 12(f) for Gadbois's alleged non-compliance with a state-court rule governing the amendment of pleadings. The Court denies the motion.

Federal Rule of Civil Procedure 12(f) permits courts to strike "impertinent matters" from pleadings, including pleadings that have been amended in a way that is non-compliant

4

with court rules. Fed. R. Civ. P. 12(f); *see also Spencer v. Brott*, No. 17-CV-5035, -5220 (DSD/TNL), 2019 WL 6884775, at *10 (D. Minn. Nov. 21, 2019) (striking pleading that was not amended in keeping with court rules as "impertinent" under Rule 12(f)), *report and recommendation adopted*, 2019 WL 6874657 (D. Minn. Dec. 17, 2019). The premise of Arrow's argument is that Minnesota state-court rules applied to Gadbois's amendment of his complaint. Arrow asserts that, under Minnesota Rule of Civil Procedure 15.01, a party is permitted to amend their pleading as a matter of course only *before* a responsive pleading is served. *See* Minn. R. Civ. P. 15.01. According to Arrow, Gadbois's Amended Complaint must be stricken because he filed it approximately two weeks *after* Arrow filed its responsive pleading in Minnesota state court just prior to removal.

The Court declines Arrow's invitation to apply state court procedural rules because the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). The time to amend a pleading is therefore governed by Federal Rule of Civil Procedure 15(a), which permits a party to amend "its pleading once as a matter of course no later than . . . 21 days *after* service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1)(B) (emphasis added); *see also, e.g.*, *Sexton v. Spirit Airlines, Inc.*, No. 2:21-CV-00898 (TLN/AC), 2022 WL 976914, at *2 (E.D. Cal. Mar. 30, 2022) (applying Rule 15(a) to determine timeliness of amended pleading following defendant's removal of action to federal court). Arrow filed and served its responsive pleading and notice of removal in state court on May 7, 2024. (Doc. Nos. 1, 1-4, 3.) Gadbois filed the Amended Complaint fourteen days later—well within the twenty-one days permitted by

5

Rule 15(a). (Doc. No. 1-4; Doc. No. 5.) Therefore, the Court declines to strike Gadbois's Amended Complaint and instead deems it to be Gadbois's operative pleading.

## II. MOTION TO DISMISS CLAIMS OF AGE DISCRIMINATION

Arrow next argues that the Court should dismiss Gadbois's Amended Complaint because Gadbois's MHRA and ADEA claims are barred by the contractual six-month limitation on claims set forth in the Agreement. For the reasons discussed below, the Court is not convinced by this argument.

Though the motion is brought under Federal Rule of Civil Procedure 12(b)(6), the Court's consideration of the Agreement renders this motion one for summary judgment.[2] Under Rule 56, courts will grant a motion for summary judgment "if the movant shows

---

[2] Generally, on a motion to dismiss, district courts are limited to the four corners of the complaint and any "documents necessarily embraced by the complaint" without converting the motion into one for summary judgment. *See Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004); Fed. R. Civ. P. 12(d). A document is "embraced" by the pleadings when its "contents are alleged in a complaint" and no party questions its authenticity. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Further, "[i]t is generally true that the district court must convert a Rule 12[] motion into one for summary judgment if it considers evidence 'in opposition to the pleading.'" *Id.* Here, the Agreement is not embraced by the pleadings because Gadbois's MHRA and ADEA claims do not rise or fall on the interpretation of its terms and he does not describe the Agreement's contents in his pleading. *See BitNile, Inc. v. Perrill*, No. 22-CV-2911 (WMW/DLM), 2023 WL 5723818, at *5–6 (D. Minn. Sept. 5, 2023) (declining to find that a contract was embraced by the pleadings where the contract was not attached to the complaint and the complaint did not allege contract claims). Instead, Arrow offers the Agreement in opposition to the pleadings. Because the parties had constructive notice that the Court would consider the Agreement's limitations period—the parties and the Court discussed its implications at length at the hearing on this motion—the Court will consider the Agreement and convert the motion into one for summary judgment. *Angel v. Williams*, 12 F.3d 786, 788–89 (8th Cir. 1993) (noting that "constructive notice of the court's intention" to consider matters outside of the complaint is enough to satisfy Rule 12).

6

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts view the evidence and draw all justifiable inferences in favor of the non-moving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). However, the non-moving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (quotation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

Gadbois's claims arise under the MHRA and the ADEA, both of which prohibit employers from discriminating against employees based on their age. 29 U.S.C. § 623(a); Minn. Stat. § 363A.08, subd. 2. By statute, complainants pursuing claims under either statutory regime have more than six months to, depending on the claim, file a charge of discrimination or lawsuit—one year under the MHRA with no exhaustion-of-remedies requirement; and, as applicable in Minnesota, 300 days under the ADEA.[3] *See* 29 U.S.C. § 626(d)(1)(A); Minn. Stat. § 363A.28, subd. 3(a); *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1034 (8th Cir. 2012); *Birts v. St. Jude's (Med.)*, No. 18-CV-2316 (NEB/HB), 2018

---

[3] The ADEA has a 180-day deadline that extends to 300 days in states like Minnesota where a state law prohibits age discrimination and a state agency or authority enforces that law (i.e., the MHRA). *See* 29 U.S.C. §§ 626(d)(1)(B), 633(b).

WL 7247178, at *5 (D. Minn. Dec. 4, 2018). Gadbois brought his claims within the time periods permitted by applicable statutes.

Nevertheless, Arrow asserts that Gadbois's claims are time-barred because Paragraph 19 of the Agreement provides that "any claim, charge or lawsuit relating to [employee's] service with Company . . . must be filed no later than 6 months after the date of the employment action that is the basis of the claim, charge or lawsuit," and that the employee "waive[s] any statute of limitations to the contrary." (Doc. No. 3-1 ¶ 19.) The problem with Arrow's argument is that it has not demonstrated that Paragraph 19 remained enforceable after Gadbois's termination from employment.

Basic tenets of contract interpretation provide that written contracts "will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Reeder v. Reeder*, 222 N.E.3d 734, 739 (Ohio Ct. App. 2023) (quotation omitted).[4] Further, the court will "harmonize provisions and words so that every word is given effect," *id.* (quotation omitted), and will avoid "any interpretation of a contract that would render terms or provisions superfluous or meaningless." *Eagle Realty Invests., Inc. v. Dumon*, 201 N.E.3d 963, 969 (Ohio Ct. App. 2022).

Paragraph 7, which purports to govern the "Termination of Employment," provides that, "[u]pon the termination of this Agreement, regardless of the reason, *all* rights and obligations of Company and Employee under this Agreement shall be terminated, except that all of the obligations set forth in Paragraphs 8, 9, 10, 11 and 12 hereof shall continue

---

[4] The Court relies on Ohio contract law because the parties agreed that the "Agreement shall be governed in all respects by the laws of the State of Ohio." (Doc. No. 3-1 ¶ 18.)

in effect for their full duration, as specified below." (Doc. No. 3-1 ¶ 7 (emphasis added).) The Court observes that the Agreement does not explicitly set forth when its "term" ends. However, when read as a whole and giving effect to its plain language (as the Court must), the Agreement clearly contemplates the Agreement's term ending upon termination of employment. (*See id.* ¶ 2 (prohibiting employee from "moonlighting" during "the term of this Agreement"), ¶ 9 (providing for a non-compete term that lasts "during the term of this Agreement and for two (2) years thereafter"), ¶ 10 (setting forth non-solicitation period as being in effect "during the term of this Agreement and for (2) years thereafter").) Based on the unambiguous contract language, the Court is left with the conclusion that the parties intended that, when employment ended, so did the enforceability of Paragraph 19. *See Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 150 (Ohio 1978) (providing that courts "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties"). Nothing in Paragraph 19 itself suggests otherwise.

Because Arrow's argument for dismissal conflicts with the plain language of Paragraph 7, the Court cannot conclude that Gadbois's claims were untimely. Thus, the Court denies Arrow's motion to dismiss Gadbois's MHRA and ADEA claims as time-barred.

**III. MOTION FOR PARTIAL SUMMARY JUDGMENT ON ARROW'S COUNTERCLAIM**

Arrow also argues that the Court should grant partial summary judgment on the issue of liability on its breach-of-contract Counterclaim. (Doc. No. 9 at 19–21.) As discussed below, the Court denies the motion for two reasons.

First, the Court is not convinced that Gadbois breached the Agreement. In its Counterclaim, Arrow alleges that Gadbois breached Paragraph 19 of the Agreement by initiating litigation approximately one month after the contractual six-month limitations period expired. However, for the reasons discussed *supra* Part II, Arrow's argument appears to conflict with the express language of Paragraph 7, which provides that Paragraph 19 became unenforceable at the end of employment. Because Arrow has not convinced the Court that Gadbois could have breached Paragraph 19 after his employment was terminated, the Court cannot grant Arrow's motion for summary judgment.

Second, the Court is concerned that terms of Paragraph 19 are not essential to the purpose of the Agreement such that its alleged breach gives rise to an actionable claim of breach of contract. In Ohio, well-settled law provides that "[a] party does not breach a contract when that party substantially performs the terms of the contract," and, therefore, "[n]ominal, trifling, or technical departures from the terms of a contract are not sufficient to breach it." *Burlington Res. Oil & Gas Co. v. Cox*, 729 N.E.2d 398, 402 (Ohio Ct. App. 1999) (citing *Ohio v. Farmers' Ins. Co. v. Cochran*, 135 N.E. 537 (Ohio 1922)). However, "where the performance of a term is essential to the purpose of the contract, a default of that term is not excusable no matter how trifling." *Sims v. Anderson*, 38 N.E.3d 1123, 1129 (Ohio Ct. App. 2015). This doctrine of substantial performance applies where a party "has made a honest [sic] or good faith effort to perform the terms of the contract." *Burlington Res.*, 729 N.E.2d at 402.

The Court observes that the Agreement's purpose was to govern Gadbois's and Arrow's employment relationship and to provide Arrow with remedies for Gadbois's

breach of any post-employment restrictive covenants. (*See* Doc. No. 3-1.) The Agreement repeatedly draws special attention to Paragraphs 8, 9, 10, 11, and 12, which comprise a non-disclosure provision, the non-competition provision, the non-solicitation provision, terms defining and protecting the confidential information about Arrow to which Gadbois may have access while employed, and Arrow's remedies against Gadbois for his breach of any of those provisions. (*Id.* ¶¶ 8, 9, 10, 11, 12; *see also id.* ¶ 1 (providing that Gadbois's employment is "consideration for" his promises in Paragraphs 8, 9, 10, 11, and 12); ¶ 3 (providing that Gadbois's salary is "consideration for" his covenants in Paragraphs 8, 9, 10, 11, and 12); ¶ 7 (providing that, "[u]pon the termination of this Agreement, regardless of the reason, all rights and obligations of Company and Employee under this Agreement shall be terminated, except [for] . . . Paragraphs 8, 9, 10, 11 and 12"); ¶ 16 (providing special amendment procedures for potential amendments to Paragraphs 8, 9, 10, 11, and 12).) The essential terms of the Agreement appear to be Paragraphs 8, 9, 10, 11, and 12. Absent evidence and argument that strict performance of Paragraph 19 is "essential to the purpose of the contract," *Sims*, 38 N.E.3d at 1129, the Court cannot grant Arrow's request for summary judgment on its Counterclaim.[5]

---

[5] The Court also observes that Arrow may overstate its damages. Arrow asserts that its damages comprise attorneys' fees and costs expended in defending this motion. It is true that an employer may recover the costs of defending a lawsuit brought by an employee in contravention of a covenant not to sue. *See, e.g.*, *Astor v. Int'l Bus. Mach. Corp.*, 7 F.3d 533, 540 (6th Cir. 1993) (applying Ohio law). However, neither Arrow nor Gadbois bargained for a covenant not to sue. (*See* Doc. No. 3-1.) Thus, Arrow's damages may be limited to the costs of having defended a lawsuit that was initiated in January 2024 or April 2024 instead of on or before December 5, 2023 (six months from the date of termination).

Thus, because Arrow has not demonstrated that Paragraph 19 is enforceable as against Gadbois's post-employment claims and that Paragraph 19 is a material term of the Agreement, the Court cannot grant Arrow's motion for partial summary judgment on the issue of liability.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Arrow's motion to strike (Doc. No. 7) the amended complaint is DENIED;

2. Arrow's motion for summary judgment (Doc. No. 7) on Gadbois's claims is DENIED; and

3. Arrow's motion for partial summary judgment (Doc. No. 7) on its Counterclaim is DENIED.

Dated: March 10, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court